RECEIVED
ON
JUN 06 08
FIELD ASSURANCE
DAVOL INC.

State of Tennessee

**Department of State**

Division of Business Services
312 Rosa L Parks Ave
6th Floor Wm. R. Snodgrass Tower
Nashville, Tennessee 37243

6/2/2008
Date

70080500000176381428
Certified Number

File No: A8LA0263

Company: DAVOL, INC.

Name:

Agent/POE:

Address: 100 CROSSING BLVD.
WARWICK, RI 02886

Country:

RE: KENNETH HUMPHREY AND WIFE CAROLYN J. HUMPHREY

EXHIBIT A

VS: DAVOL, INC.

## Notice of Service

The enclosed summons and attachments are hereby officially served upon you by the Office of the Tennessee Secretary of State pursuant to Tennessee Law. Please refer to the summons and attachments for details concerning the lawsuit filed against you. If you have any questions, please contact the clerk of the court which issued the summons. You can obtain the court's telephone number by calling information (area code) 555-1212. The name of the court and county where the court is located will be on the attached summons.

The summons will either tell you a court date and time at which you must appear to defend yourself or tell you the number of days from the day you are served within which you must file an answer upon the plaintiff's attorney. Failure to appear in court at the time specified or failure to answer the summons within the given time could result in a judgement by default being rendered against you for relief sought in the lawsuit.

The Secretary of State's Office cannot give you legal advice. If you need legal advice, please consult a private attorney.

Sincerely,

Riley C Darnell

Riley C. Darnell
Secretary of State

enclosures
Initia KDF
CC:

SS-4214 (Rev. 3/97) RDA 1003

IN THE SE__ _NTH JUDICIAL DISTRICT FOR ANDERSON COUNT_ __ENNESSEE
CIRCUIT DIVISION

KENNETH HUMPHREY and wife
CAROLYN J. HUMPHREY,
Plaintiffs,

v.

No. A8LA0263

DAVOL INC., a subsidiary of
C.R. BARD INC., a foreign corporation
with its principle office located at 100 Crossing
Boulevard, Warwick, RI 02886, and
C.R. BARD INC., with its principle office
located at 730 Central Avenue,
Murray Hill, NJ 07974

COPY

Defendant.

## SUMMONS

You are hereby summoned and required to serve upon J. Timothy Bobo and Curtis W. Isabell, Plaintiffs' attorneys, whose address is 108 S. Main Street, Post Office Box 530, Clinton, Tennessee 37716, an Answer to the Petition herewith served upon you within thirty (30) days after service of this Summons and Complaint upon you, exclusive of day service. If you fail to do so, Judgment by Default can be taken against you for the relief demanded in the Complaint.

Issued and tested this 23 day of May, 2008.

BARRY E. PELIZZARI
Clerk

Betty D. Taylor
Deputy Clerk

IF YOU HAVE A DISABILITY AND REQUIRE ASSISTANCE, PLEASE CONTACT 865-463-6824

## NOTICE

To the Defendant(s):

Tennessee law provides a Four Thousand ($4,000.00) Dollar personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action, and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time, and may be changed by you thereafter as necessary, however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family, and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right, or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

**TO THE PROCESS SERVER:**

**(Secretary of State)** Serve the Defendants, Davol Inc., at their principle office at 100 Crossing Blvd., Warwick, RI 02886 through the Secretary of State for the State of Tennessee, Corporate Section, 18th Floor, Suite 500, James K. Polk Bldg., Nashville, Tennessee 37243-0306.

## RETURN

I received this summons on the ____ day of ________________, 2008.

I hereby certify and return that on the _____ day of ___________, 2008, I:

( ) Served this Summons and a Complaint on Defendant, , in the following manner:

______________________________________________

______________________________________________

______________________________________________

( ) Failed to serve this summons within ninety days after its issuance because:

______________________________________________

______________________________________________

______________________________
Process Server

This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.

IN THE SEVENTH JUDICIAL DISTRICT FOR ANDERSON COUNTY, TENNESSEE
CIRCUIT DIVISION

RECEIVED STATE OF TENN.
2008 MAY 28 PM
RILEY DARNE SECRETARY OF S

KENNETH HUMPHREY and wife
CAROLYN J. HUMPHREY,
Plaintiffs,

v. No. A8LA0263

DAVOL INC., a subsidiary of
C.R. BARD INC., a foreign corporation
with its principle office located at 100 Crossing
Boulevard, Warwick, RI 02886, and
C.R. BARD INC., with its principle office
located at 730 Central Avenue,
Murray Hill, NJ 07974

Defendant.

## SUMMONS

You are hereby summoned and required to serve upon J. Timothy Bobo and Curtis W. Isabell, Plaintiffs' attorneys, whose address is 108 S. Main Street, Post Office Box 530, Clinton, Tennessee 37716, an Answer to the Petition herewith served upon you within thirty (30) days after service of this Summons and Complaint upon you, exclusive of day service. If you fail to do so, Judgment by Default can be taken against you for the relief demanded in the Complaint.

Issued and tested this 23 day of May, 2008.

BARRY E. PELIZZARI
Clerk

Betty D. Saylor
Deputy Clerk

IF YOU HAVE A DISABILITY AND REQUIRE ASSISTANCE, PLEASE CONTACT 865-463-6824

## NOTICE

To the Defendant(s):

Tennessee law provides a Four Thousand ($4,000.00) Dollar personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action, and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time, and may be changed by you thereafter as necessary, however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed; these include items of necessary wearing apparel for yourself and your family, and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible, and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right, or how to exercise it, you may wish to seek the counsel of a lawyer.

## SERVICE INFORMATION

**TO THE PROCESS SERVER:**

**(Secretary of State)** Serve the Defendants, C.R. Bard Inc., at their principle office at 730 Central Ave., Murray Hill, NJ 07974 through the Secretary of State for the State of Tennessee, Corporate Section, 18th Floor, Suite 500, James K. Polk Bldg., Nashville, Tennessee 37243-0306.

## RETURN

I received this summons on the ____ day of ________________, 2008.

I hereby certify and return that on the _____ day of ___________, 2008, I:

( ) Served this Summons and a Complaint on Defendant, , in the following manner:

______________________________________________

______________________________________________

______________________________________________

( ) Failed to serve this summons within ninety days after its issuance because:

______________________________________________

______________________________________________

______________________________
Process Server

This summons is issued pursuant to Rule 4 of the Tennessee Rules of Civil Procedure.

STATE OF TENNESSEE, ANDERSON COUNTY
I, the undersigned Clerk of the Circuit/Criminal Court, do hereby certify that this is a true and correct copy of the original of the instrument filed in this cause.
This 23 day of May, 2008
BARRY E. PELIZZARI, CLERK
By: Betty D. Saylor (D.C.)

IN THE SEVENTH JUDICIAL DISTRICT FOR ANDERSON COUNTY, TENNESSEE
CIRCUIT DIVISION

KENNETH HUMPHREY and wife
CAROLYN J. HUMPHREY, citizens
and residents of 131 Lambdin Road,
Andersonville, Anderson County,
Tennessee 37705

Plaintiffs,

v.

No. A8LA0263
Jury Requested

DAVOL INC., a subsidiary of
C.R. BARD, INC., a foreign
corporation with its principle
office located at 100 Crossing
Boulevard, Warwick,
Rhode Island 02886, and
C.R. BARD, INC., with its
principle office located at
730 Central Avenue,
Murray Hill, New Jersey 07974

Defendants.

STATE OF TENNESSEE, ANDERSON COUNTY
I, the undersigned Clerk of the Circuit/Criminal Court, do hereby certify that this is a true and correct copy of the original of the instrument filed in this cause.
This 23 day of May 2008
BARRY E. PELIZZARI, CLERK
By: Betty B. Taylor (D.C.)

FILED
2008 MAY 2 A 11:39
BARRY E. PELIZZARI
CIRCUIT COURT CLERK

## COMPLAINT

Come the Plaintiffs, Kenneth Humphrey and wife, Carolyn J. Humphrey and would respectfully show unto this Honorable Court as follows:

1. That the Plaintiffs, Kenneth Humphrey and wife, Carolyn J. Humphrey, are citizens and residents of Anderson County, Tennessee. The Defendant Davol, Inc. is a subsidiary of C.R. Bard, Inc., a foreign corporation in the business of manufacturing, selling and distributing medical healthcare products including the Bard Composix Kugel Mesh Patch, throughout the world, the United States and in Anderson

County, Tennessee. The Defendant, C.R. Bard, Inc. is a foreign corporation in the business of manufacturing, selling and distributing medical healthcare products including the Bard Composix Kugel Mesh Patch that is the subject of this litigation, throughout the world, the United States, and in Anderson County, Tennessee. This incident giving rise to this cause of action occurred in Anderson County, Tennessee.

2. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show unto this Honorable Court that on or about July 27, 2004, the Plaintiff Carolyn J. Humphrey had surgery to repair two hernias during which the Bard Composix Kugel Mesh Patch was implanted at Fort Sanders Regional Medical Center in Knoxville, Knox County, Tennessee. On or about May 30, 2007, the Plaintiff, Carolyn Humphrey, received notice by correspondence sent to her residence in Anderson County that there had been a voluntary recall or market withdrawal by the Defendants of the mesh used during her surgical procedure due to a defect in the memory recoil ring of the Bard Composix Kugel Mesh Patch, causing the Plaintiff, Carolyn J. Humphrey, to sustain serious and permanent personal injuries.

3. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show unto this Honorable Court that the Plaintiffs were not aware of the hazard presented by the Bard Composix Kugel Mesh Patch, that the Defendants dangerously caused and failed to correct, prior to the surgical procedure utilizing the Defendants' product. The Plaintiffs would further show this Honorable Court that the Defendants, through their agents and/or employees were aware of the hazard then and there presented to the Plaintiff, Carolyn J. Humphrey, or in the exercise of reasonable care, should have known of the dangerous and hazardous condition presented by the

defective Bard Composix Kugel Mesh Patch which caused the Plaintiff, Carolyn J. Humphrey, to sustain serious and permanent personal injuries and the need for future medical treatment.

4. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show unto this Honorable Court that on July 27, 2007, the Defendants, Davol, Inc. and C.R. Bard, Inc., were in the business of manufacturing, selling and distributing the Bard Composix Kugel Mesh Patch to various businesses throughout the United States and in Knox County, Tennessee. The Defendants manufactured and provided the Bard Composix Kugel Mesh Patch used during the surgical procedure at Fort Sanders Regional Medical Center in Knox County, Tennessee.

5. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show unto this Honorable Court that the Bard Composix Kugel Mesh Patch was defective and/or unreasonably dangerous and was so at the time of manufacture, such as to render the Defendants liable under the Restatement of Torts § 402(a) and T.C.A. § 29-28-101 et seq.

6. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey would further show unto this Honorable Court that the Defendants Davol, Inc., and C.R. Bard, Inc., knew or should have known, by an exercise of due care, that the Bard Composix Kugel Mesh Patch was unreasonably dangerous for its intended use, and there were no warnings and/or inadequate warnings of the dangerous propensities of the memory coil ring of the Bard Composix Kugel Mesh Patch.

7. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show this Honorable Court that the Bard Composix Kugel Mesh Patch was defective and/or unreasonably dangerous and that the Defendants failed to provide adequate warnings of the memory recoil ring's propensity to break under the stress of surgical placement during hernia repair surgery, which can lead to numerous injuries to innocent patients such as the Plaintiff, Carolyn J. Humphrey..

8. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey would further show unto this Honorable Court that the Bard Composix Kugel Mesh Patch was defective and/or unreasonably dangerous in that it failed to function as it was intended and its failure to properly function resulted in the need for additional medical treatment and possible future surgery for the Plaintiff, Carolyn J. Humphrey.

9. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show this Honorable Court that the Defendants were negligent in failing to adequately design the Bard Composix Kugel Mesh Patch in such a manner as to provide for the safe surgical placement and use to repair hernias.

10. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show this Honorable Court that the Defendants, in designing, manufacturing and distributing the Bard Composix Kugel Mesh Patch in question, gave certain implied and express warranties pursuant to T.C.A. § 47-2-313, T.C.A. § 47-2-314 and T.C.A. § 47-2-315. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show unto this Honorable Court that the breach of these warranties by Defendant Davol Inc., and C.R. Bard, Inc. were the proximate cause of Plaintiffs, Kenneth Humphrey and wife, Carolyn J. Humphrey's injuries and damages.

11. The Plaintiffs, Kenneth Humphrey and wife Carolyn J. Humphrey, would further show unto this Honorable Court that as a result of the Bard Kugel Mesh Patch used during her surgical procedure to repair the hernia on July 27, 2004, the Plaintiff, Carolyn J. Humphrey, has sustained serious and permanent personal injuries, great pain and mental anguish, significant hospital and medical expenses and future hospital and medical expenses, all as a result of the negligence of the Defendants Davol, Inc., and C.R. Bard, Inc. and all without fault of the Plaintiff Carolyn J. Humphrey. The Plaintiff, Kenneth Humphrey, sustained the loss of consortium of his wife, Carolyn J. Humphrey and incurred significant hospital and medical expenses and future hospital and medical expenses and lost wages, all as the result of the negligence of the Defendants, Davol Inc., and C.R. Bard Inc., and all without fault of the Plaintiffs.

WHEREFORE, the Plaintiff, Kenneth Humphrey, demands judgment against the Defendants, Davol Inc., and C.R. Bard Inc., for the sum of Twenty Thousand Dollars ($20,000.00) as his compensatory damages, and the Plaintiff, Carolyn J. Humphrey, demands judgment against the Defendants, Davol Inc., and C.R. Bard Inc., for the sum of Fifty Thousand Dollars ($50,000.00) as her compensatory damages, and the Plaintiffs demand a six-member jury to try this cause.

On this the 23rd day of May, 2008.

Kenneth Humphrey
Kenneth Humphrey, Plaintiff

Carolyn J. Humphrey
Carolyn J. Humphrey, Plaintiff

By: Curtis W. Isabell
J. Timothy Bobo BPR #017263
Curtis W. Isabell BPR #022859
Attorneys for Plaintiff

RIDENOUR & RIDENOUR
108 South Main Street
Post Office Box 530
Clinton, Tennessee 37717-0530
(865) 457-0755

## COST BOND

We hereby acknowledge ourselves as sureties for the costs of this cause for all costs, taxes and damages, in accordance with T.C.A. §20-12-120.

Kenneth Humphrey, Plaintiff

Carolyn J. Humphrey, Plaintiff

By:
J. Timothy Bobo
Curtis W. Isabell
Attorneys at Law

IN THE SEVENTH JUDICIAL DISTRICT FOR THE STATE OF TENNESSEE
CIRCUIT DIVISION

KENNETH HUMPHREY and wife,
CAROLYN J. HUMPHREY,

Plaintiffs,

v. No. ______________
JURY DEMAND

DAVOL, INC., and
C.R. BARD, INC.,

Defendants.

INTERROGATORIES TO THE DEFENDANT, C.R. BARD, INC.

Now come the Plaintiffs, Kenneth Humphrey and wife, Carolyn J. Humphrey and require the Defendant, C.R. Bard, Inc., to answer under oath the following Interrogatories within thirty (30) days from the date of service as provided by law, and a copy of the answers be furnished to Plaintiffs' attorneys, J. Timothy Bobo, and Curtis W. Isabell, Post Office Box 530, Clinton, Tennessee 37717.

NOTE A: When used in these Interrogatories, the term Defendant, or any synonym thereof, is intended to and shall embrace and include, in addition to defendant, all agents, servants, representatives, private investigators and others who are in a position of, or may have obtained information for or on behalf of Defendant.

NOTE B: These Interrogatories shall be deemed continuing so as to require supplemental answers if you or your attorneys obtain further information between the time answers are served and the judgment satisfied.

NOTE C: Each Defendant shall answer each question individually.

1. State your name, address and place of employment, and why you are able to answer these Interrogatories as a representative of the Defendant, C.R. Bard, Inc.

ANSWER:

2. State the names, addresses and telephone numbers of each and every witness who has knowledge of the facts involved in this lawsuit, including a copy of any report and/or investigation regarding said incident.

ANSWER:

3. (a) State in full and complete detail any oral statement given to you, or your representatives by the Plaintiff(s), and state the substance of said statement in full and complete detail, the location of the making of said statement, and the names, addresses and telephone numbers of all persons present when said statement was made.

(b) Attach copies of your answers to these Interrogatories of all statements of a written nature, including any electronically recorded statement given by this Plaintiff(s).

ANSWER:

4. Attach to your answers to these Interrogatories copies of all documents of whatever nature, including, but not limited to, medical records, and all documents and records upon which you intend to rely at trial, or intend to introduce into evidence.

ANSWER:

5. In complete detail, please state when the Defendant C.R. Bard, Inc. designed the Bard Composix Kugel Patch used during the Plaintiff Carolyn J. Humphrey's surgical procedure on July 27, 2004 as described in the Complaint.

ANSWER:

6. Please provide the name of the engineer, and/or any other individual who designed the Bard Composix Kugel Patch used in the Plaintiff Carolyn J. Humphrey's surgical procedure on July 27, 2004 as described in the Complaint.

ANSWER:

7. Please describe in complete detail all testing to ensure that the design of the Bard Composix Kugel Patch utilized in the Plaintiff Carolyn J. Humphrey's surgical procedure on July 27, 2004 as described in the Complaint was not inherently dangerous. Please provide any documentation regarding the testing that was done.

ANSWER:

8. Please provide in complete detail all other designs of the Bard Composix Kugel Mesh Patch that were considered by the Defendant, C.R. Bard, Inc.

ANSWER:

9. Please state whether the Defendant, C.R. Bard, Inc., recommended that any warning signs be placed upon the Bard Composix Kugel Patch that was used in

the Plaintiff Carolyn J. Humphrey's surgical procedure on July 27, 2004 as described in the Complaint. Please provide Defendant's exact recommendations as to type of warning, placement of warning, and any other details that the Defendant, C.R. Bard, Inc., recommended for the Bard Composix Kugel Mesh Patch that is the subject of this litigation.

ANSWER:

10. State in complete detail whether any lawsuits have been filed against the Defendant, C.R. Bard, Inc., related to injuries and/or accidents occurring from the Bard Composix Kugel Mesh Patch prior to May 30, 2007. For each lawsuit, list the name of the Plaintiff, date of the lawsuit and jurisdiction where the lawsuit was filed.

ANSWER:

11. State in complete detail whether any lawsuits have been filed against the Defendant, C.R. Bard, Inc., related to injuries and/or accidents occurring from the Bard Composix Kugel Mesh Patch after May 30, 2007. For each lawsuit, list the name of the Plaintiff, date of the lawsuit and jurisdiction where the lawsuit was filed.

ANSWER:

12. If you, as a Defendant, utilized the services of a private investigator, or utilize the services of any individual who obtains photographic evidence to be used at the trial of this cause, or video taped proof that is to be introduced at the hearing of this cause, provide unto the Plaintiffs the name of the private investigator, or the name of the

individual who has obtained photographic evidence, or the name of the individual who has obtained videotaped evidence, and provide unto the attorney for the Plaintiffs copies of the investigative report, or a copy of the photographic evidence, or a copy of the videotaped evidence, to be introduced at the trial of this cause, and with this Interrogatory to be continuing in nature until the trial of this cause.

ANSWER:

13. Please identify each person whom you may call as an expert witness at the trial of this cause and for each expert, provide the subject matter on which the witness is expected to testify the mental impressions and opinions to be expressed by the witness, all information, including, but not limited to, the facts known to the witness and document provided to the witness, which relate to or form the basis of each mental impression and opinion held by the witness, the qualifications of the witness, all documents and tangible things prepared by the witness or for the witness in anticipation of this trial, the compensation to be paid for the witness' study and testimony, and a listing of any other cases, including style of case, court case number, and lawyers representing each of the parties, in which the witness has testified as an expert at trial or by deposition within the proceeding four years.

ANSWER:

14. Please identify how the Defendant, C.R. Bard, Inc., notified healthcare professionals and distributors of the defective and/or unreasonably dangerous condition of its Bard Composix Kugel Mesh Patch and the recall of the specific lots of the patch in

question by the Defendant, C.R. Bard, Inc. By way of production of documents, please provide any documentation regarding the recall and notice sent to healthcare professionals and distributors.

ANSWER:

15. Please identify how the Defendant, C. R. Bard, Inc., notified the general public that may have innocently had the defective Bard Composix Kugel Mesh Patch used in the patients' surgical procedure. By way of production of documents, please provide any and all documentation regarding any notice to the general public.

ANSWER:

16. By way of production of documents, please provide any notice given to the Plaintiffs regarding the defective Bard Composix Kugel Mesh Patch used in the Plaintiff, Carolyn J. Humphrey's surgical procedure.

ANSWER:

17. Do you understand that your answers to these Interrogatories are being made under oath?

ANSWER:

Respectfully submitted on the 28th day of May, 2008.

By: [signature]
J. Timothy Bobo BPR #017263
Curtis W. Isabell BPR #022859
Attorneys for Plaintiffs

RIDENOUR & RIDENOUR
108 South Main Street
Post Office Box 530
Clinton, Tennessee 37717-0530
(865) 457-0755

State of Tennessee
Department of State
vision of Business Services
;12 Eighth Avenue North
r, William R. Snodgrass Tower
Nashville, TN 37243

7008 0500 0001 7638 1428

UNITED STATES PITNEY BOWES
02 1A $ 06.24⁰
0004323321 JUN 02 2008
MAILED FROM ZIP CODE 37243

RECEIVED
ON
JUN 0 6 08
FIELD ASSURANCE
DAVOL INC.

Da Daug

DAVOL, INC.
100 CROSSING BLVD.
WARWICK, RI 02886

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
Beaumont Division

RUBEN CAVAZOS

Plaintiff,

vs.

C. R. BARD, INC., AND DAVOL INC.

Defendants.

CASE NO. 07cv1394

COMPLAINT FOR PERSONAL INJURIES AND DAMAGES

DEMAND FOR JURY TRIAL

**NATURE OF THE CASE**

1. Plaintiff, Ruben Cavazos, developed serious and potentially life-threatening medical conditions caused by the surgical insertion of a defective patch manufactured by Defendants ("Bard® Composix® Kugel® Hernia Patch"). This lawsuit asserts claims for negligence; strict product liability for failure to warn; strict product liability for design defect; and breach of implied warranty against the defendants responsible for the design, manufacture, production, testing, study, inspection, labeling, marketing, advertising, sales, promotion and/or distribution of the patch that caused Mr. Cavazos' medical conditions.

**JURISDICTION AND VENUE**

2. This court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (diversity of citizenship). The matter in controversy in this civil action exceeds the sum or value of $75,000, exclusive of costs and interests, as to each defendant and is between citizens of different states.

3. Venue in this District is proper under 28 U.S.C. §1391. The events and omissions giving rise to this cause of action occurred in substantial part in this District, where defendants transact business.

**THE PARTIES**

**Plaintiff**

4. At all relevant times plaintiff was a resident and citizen of Harris County, Texas.



EXHIBIT B

**Defendants**

5. Defendant C. R. Bard, Inc., is a New Jersey corporation with its principal place of business in New Providence, Union County, New Jersey and may be served with process through its Vice President and General Counsel to wit:

Stephen J. Long
730 Central Avenue
New Providence, NJ 07974

6. Defendant Davol Inc., is a Delaware corporation with its principal place of business in New Providence, Union County, New Jersey and may be served with process through its Vice President and General Counsel to wit:

Nadia J. Bernstein
730 Central Avenue
New Providence, NJ 07974

**FACTUAL ALLEGATIONS**

**Plaintiff's Injuries**

7. Plaintiff Ruben Cavazos first had the patch implanted on February 16, 2004 as part of a surgery performed to repair an abdominal hernia.

8. On September 20, 2004, Mr. Cavazos had a subsequent surgery to re-attach the patch to the abdominal wall.

9. From November 4, 2004 until he was admitted to the VA hospital in August of 2005, Mr. Cavazos was treated for chronic pain and discharge coming from an infection in the area of the patch.

10. On August 23, 2005 Mr. Cavazos underwent another surgery in an attempt to correct the on going problems associated with the patch.

**Defendants' Misconduct**

11. At all material times, each defendant was responsible for designing, manufacturing, producing, testing, studying, inspecting, mixing, labeling, marketing, advertising, selling, promoting and/or distributing their patch, which was implanted in plaintiff's abdomen.

12. Each defendant had an independent obligation to know, analyze and disclose scientific and medical information about the patch in a timely and adequate manner and to provide warnings about risks and side effects as soon as it was aware of them. Each defendant failed to do so with respect to the patch implanted in to the plaintiff, including by failing to know, analyze and/or disclose defects in the patch.

13. Each defendant made claims regarding the benefits associated with the implantation of the patch and the risks and side effects of the patch. Each defendant knew or should have known that these claims were false and misleading. They failed to adequately disclose the true health consequences and the true risks and side effects of the patch.

14. Each defendant failed to conduct adequate pre-marketing clinical testing and research and failed to conduct adequate post-marketing surveillance, to determine the safety of the patch.

15. Each defendant failed to disclose on their warning labels or elsewhere that adequate pre-marketing clinical testing and research and adequate post-marketing surveillance, had not been done, thereby giving the false impression that the patch had been sufficiently tested.

16. Each defendant knew or should have known that, at all material times, its communications about the benefits, risks and adverse effects of the patch, including communications in labels, advertisements and promotional materials, were materially false and misleading. In the alternative, each defendant was ignorant of whether or not its communications about the patch were true in material ways.

17. Plaintiff would not have agreed to allow the implantation of the patch described herein, had the defendants disclosed the true health consequences, risks and adverse events caused by the patch.

18. Each defendant's nondisclosures and misrepresentations as alleged herein were material and were substantial factors that contributed directly and causally and naturally and necessarily, to the serious injuries and damages that plaintiff has suffered.

19. Each defendant designed, manufactured and marketed the patch, a defective and unreasonably dangerous product.

## FRAUDULENT CONCEALMENT AND DISCOVERY

20. Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept plaintiff ignorant of vital information essential to her pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff's part in filing a complaint on her causes of action. Their fraudulent concealment did result in such delay.

21. Plaintiff could not reasonably have discovered the claims made herein until shortly before filing this complaint.

22. The defendants are and were under a continuing duty to disclose the true character, quality and nature of the patch that was implanted in the plaintiff, but instead they concealed them. As a result, defendants are estopped from relying on any statute of limitations defense.

## CLAIMS FOR RELIEF

### First Claim
### (Negligence)

23. Plaintiff realleges all previous paragraphs.

24. Defendants introduced the patch described herein into the stream of commerce.

25. At all material times, defendants had a duty to plaintiff and other consumers of the patch to exercise reasonable care in order to properly design, manufacture, produce, test, study, inspect, label, market, advertise, sell, promote and distribute these products. That includes a duty to warn of side effects and to warn of the risks, dangers and adverse events associated with the patch. Defendants had a similar duty to warn plaintiff's physicians of those factors.

26. Defendants knew, or in the exercise of reasonable care should have known, that the patch was of such a nature that it was not properly designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted and distributed and they were likely to cause injury to those in whom they were implanted.

27. Defendants were negligent in the design, manufacture, production, testing, study,

inspection, labeling, marketing, advertising, sales, promotion and distribution of the patch and breached duties they owed as set forth herein. In particular, defendants:

a. Failed to use due care in the design of the patch to prevent the aforementioned risks to those in whom the patches were implanted;

b. Failed to conduct adequate pre-clinical testing and research to determine the safety of the patch;

d. Failed to conduct adequate post-marketing surveillance to determine the safety of the patch;

e. Failed to accompany their products with proper warnings regarding all possible adverse side effects and complications associated with the use of the patch and the comparative severity and duration of such adverse effects;

f. Failed to use due care in the manufacture of the patch to prevent the aforementioned risks to individuals in whom the patch was implanted;

g. Failed to adequately report adverse events associated the implantation of the patch.

h. Failed to use due care in the inspection of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

i. Failed to use due care in the labeling of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

j. Failed to use due care in the marketing of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

k. Failed to use due care in the promotion of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

l. Failed to use due care in the selling of the patch to prevent the aforementioned risks to individuals when the patch was implanted;

m. Failed to provide adequate information to healthcare providers regarding the risks associated with the implantation of the patch;

n. Failed to adequately warn about the health consequences, risks and adverse events caused by the patch; and

o. Were otherwise careless and negligent.

28. Defendants knew or should have known that the patch caused unreasonable harm and dangerous side effects that many users would be unable to remedy by any means. Despite this, defendants continued to promote and market the patches use by consumers, including plaintiff.

29. It was foreseeable to defendants that consumers, including plaintiff, would suffer injury as a result of defendants' failure to exercise ordinary care as described herein.

30. As a direct and proximate result of defendants' conduct, plaintiff suffered the injuries and damages specified herein.

**Second Claim**
**(Strict Liability: Failure to Warn)**

31. Plaintiff realleges all previous paragraphs.

32. Defendants manufactured and/or supplied the patch described herein and at all material times were in the business of doing so. They placed those products into the stream of commerce. The patch was expected to and did, reach plaintiff without substantial change in its condition.

33. When defendants placed the patch into the stream of commerce, they failed to accompany them with adequate warnings of their dangerous propensities that were either known or reasonably scientifically knowable at the time of manufacture and distribution.

34. Defendants failed to warn plaintiff's physicians and by extension plaintiff, of the true risks and dangers and of the symptoms, scope and severity of the potential complications of the patch.

35. Due to the inadequate warnings as alleged herein, at the time the patch left defendants' hands, it was unreasonably dangerous and defective.

36. Had defendants provided adequate warnings and instructions, plaintiff would not have had the patch implanted and would not have suffered the personal injuries he did.

37. The defect in the product was a producing cause of the injuries and damages specified herein.

**Third Claim**
**(Strict Liability: Design Defect)**

38. Plaintiff realleges all previous paragraphs.

39. Defendants manufactured and/or supplied the patch described herein and at all material times were in the business of doing so. They placed the patch into the stream of commerce. The patch was expected to and did, reach plaintiff without substantial change in its condition.

40. At time the patch left defendants' hands, it was in a condition not contemplated by plaintiff. Specifically, it was defectively designed and unreasonably dangerous as applicable law defines those terms.

41. The patch was dangerous to an extent beyond that which would be contemplated by the ordinary consumer. It was more dangerous than plaintiff contemplated.

42. The risks associated with the use of the patch outweighed its utility.

43. At the time of manufacture, the likelihood the product would cause the plaintiff's harm or similar harms coupled with the seriousness of those harms, outweighed defendants' burden in designing a product that would have prevented those harms.

44. There were practicable and feasible safer alternatives to the defendants' could have produced and sold.

45. The design defects in the product were a producing cause of the injuries and damages specified herein.

**Forth Claim**
**(Breach of Implied Warranty)**

46. Plaintiff re-alleges all previous paragraphs.

47. At the time defendants designed, manufactured, produced, tested, studied, inspected, labeled, marketed, advertised, sold, promoted and distributed the patch for use by plaintiff, they knew of the use for which the patch was intended and impliedly warranted their products to be of merchantable quality and safe and fit for their intended use.

48. Contrary to such implied warranty, the patch was not of merchantable quality, was not safe and/or was not fit for its intended use. It was unreasonably dangerous and unfit for the ordinary purposes for which they were used, as alleged herein. Defendants failed to warn of known or reasonably scientifically knowable defects in the patch.

49. As a direct and proximate result of defendants' conduct, plaintiff suffered the injuries and damages specified herein.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff seeks judgment against the defendants, jointly and severally, as follows:

1. Economic and non-economic damages in an amount in excess of $75,000 as to each defendant as provided by law and to be supported by the evidence at trial;

2. An award of attorneys' fees and costs of suit, if allowed by law; and

3. Such other legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury.

Respectfully submitted,

Dated: April 24, 2007

PROVOST ★ UMPHREY LAW FIRM, L.L.P.

By: ______________________________

Christopher T. Kirchmer
Texas Bar No. 00794099
P.O. Box 4905
Beaumont, TX 77704
Tel: (409) 835-6000
Fax: (409) 813-8612

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

NEIL MONTGOMERY, JR. and STORMI MONTGOMERY,

Plaintiff,

v.

DAVOL, INC.; and
C.R. BARD, INC.

Defendant.

Case No: 3:07cv 176-RV/EMT

**COMPLAINT AND JURY DEMAND**

**Complaint**

1. Plaintiffs, NEIL MONTGOMERY, JR. and STORMI MONTGOMERY are citizens and residents of the County of Escambia, State of Florida. Hereinafter, Plaintiff Neil Montgomery, Jr. will be referred to as "Plaintiff" and Plaintiff Stormi Montgomery will be referred to as "Plaintiff Stormi Montgomery".

2. Defendant, DAVOL INC. ("DAVOL") is a corporation that is incorporated under the laws of the State of Rhode Island. DAVOL has its principal place of business in the State of Rhode Island. It manufactures the Composix® Kugel Mesh Patches ("Kugel Patch") at 100 Sockanosset Crossroad, Cranston, Rhode Island. DAVOL has a registered agent in Rhode Island at CT Corporation System, 10 Weybosset St., Providence, Rhode Island. DAVOL focuses its business on products in key surgical specialties, including hernia repair, hemostasis, orthopedics, and laparoscopy.

3. Defendant, C. R. BARD INC. ("BARD") is a corporation that is incorporated under

OFFICE OF CLERK
U.S. DISTRICT CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.
07 APR 20 AM 10: 38
FILED



EXHIBIT C

Case 3:07-cv-00176-RV-EMT Document 1 Filed 04/20/2007 Page 2 of 14

the laws of the State of New Jersey. It is the corporate parent/stockholder of DAVOL and participates in the manufacture and distribution of the Kugel Patch. It also manufactures and supplies DAVOL with material that forms part of the Kugel Patch. BARD at all times relevant did substantial and continuous business in the State of Rhode Island.

**Jurisdiction and Venue**

4. The Court has jurisdiction over this action because the claim is valued at more than $75,000, and there is complete diversity of citizenship.

5. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendants reside, transact business, or are found within this District, and a substantial part of the events giving rise to the claims arose in the District.

**Facts**

6. Defendant DAVOL designed, manufactured and distributed the Kugel Patch, a hernia mesh patch that was inserted into the Plaintiff's body.

7. Defendant DAVOL, through its agents, servants and employees, participated in the manufacture and delivery of the Kugel Patch that was inserted into Plaintiff's body.

8. The Defendants submitted their 510k Application to the Federal Drug Administration (hereinafter referred to as the "FDA") on January 22, 2001. Following this 510k Application, the Kugel Patch was authorized by the FDA as a Class II medical device.

9. On April 4, 2006, Plaintiff underwent surgery at Naval Hospital Pensacola to repair an incisional hernia. A 5.4" x 7.0" Kugel Patch (Reference No. 0010202; Lot No. 43AOD063) was

used to repair the defect. The operative report says that "numerous staples were utilized firmly anchoring the patch in place."

10. The Kugel Patch hernia repair product implanted in Plaintiff was designed, manufactured, sold and distributed by DAVOL to be used by surgeons for hernia repair surgeries and was further represented by DAVOL to be an appropriate, cost-effective and suitable product for such purpose.

11. In the months that followed the surgery, Plaintiff developed abdominal tenderness and severe pain at the site of his incisional hernia repair. A CAT scan was carried out and confirmed that Plaintiff was suffering from a broken mesh and recurrent hernia.

12. A FDA Class I recall is issued for problems related to medical devices that are potentially life-threatening or could cause a serious risk to health.

13. On December 22, 2005, DAVOL recalled many sizes of Kugel Patches under a FDA Class I recall notice.

14. The Kugel Patch was recalled due to a faulty "memory recoil ring" that can break under pressure. Incidents of ring migration, intestinal fistulae, bowel perforation and even death related to the Kugel Patch have been reported.

15. On March 31, 2006, the initial Class I recall on the Kugel Patch was expanded to include the type of Kugel Patch used in Plaintiff's ventral hernia repair.

16. In or around March 2007, Plaintiff learned for the first time that the hernia repair mesh implanted in him on April 4, 2006 was a defective Kugel Mesh and was part of a national recall.

17. Plaintiff has suffered and will continue to suffer physical pain and mental anguish.

Case 1:08-cv-02565-ML-LDA Document 1-2 Filed 06/11/2008 Page 29 of 39

18. Plaintiff has incurred substantial medical bills, and has lost wages.

19. DAVOL and BARD withdrew a large number of Kugel Patches as a result of the high complication and failure rate of the product.

20. Upon information and belief, DAVOL and BARD failed to comply with the FDA application and reporting requirements.

21. Upon information and belief, DAVOL and BARD were aware of the high degree of complication and failure rate associated with their Kugel Patch before it was recalled.

22. Upon information and belief, DAVOL and BARD were aware of the defect in manufacture and design prior to the recall of their Kugel Patch.

**<u>COUNT I</u>**

**Negligence**

23. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1-22 as though fully set forth herein.

24. Defendants DAVOL and BARD were negligent to Plaintiff in the following respects:

25. DAVOL and BARD at all times mentioned had a duty to properly manufacture, test, inspect , package, label, distribute, market, examine, maintain, supply, provide proper warnings and prepare for use in the general public, the Kugel Patch.

26. DAVOL and BARD at all times mentioned knew or in the exercise of reasonable care should have known, that the Kugel Patches were of such a nature that they were not properly manufactured, tested, inspected, packaged, labeled, distributed, marketed, examined, sold supplied, prepared and/or provided with the proper warnings, and were reasonably likely to injure Kugel Patch

users.

27. DAVOL and BARD negligently and carelessly designed, manufactured, tested, inspected, packaged, labeled, distributed, recommended, displayed, sold, examined and/or supplied the Kugel Patch such that the product was dangerous and unsafe for the use and purpose for which it was intended.

28. DAVOL and BARD were aware of the probable consequences of the Kugel Patch. DAVOL and BARD knew or should have known the Kugel Patch would cause serious injury; they failed to disclose the known or knowable risks associated with the Kugel Patch. DAVOL and BARD willfully and deliberately failed to avoid those consequences, and in doing so, they acted in conscious disregard of the safety of Plaintiff.

29. Defendants DAVOL and BARD owed a duty to Plaintiff to adequately warn him and his treating physicians, of the risks of breakage, separation, tearing and splitting associated with the Kugel Patch and the resulting harm and risk it would cause patients.

30. Defendants DAVOL and BARD breached their duty by failing to comply with state and federal regulations concerning the study, testing, design, development, manufacture, inspection, production, advertisement, marketing, promotion, distribution, and/or sale of the Kugel Patch.

31. As a direct and proximate result of the duties breached, the Kugel Patch used in Plaintiff's hernia repair surgery failed, resulting in Plaintiff suffering pain and harm.

32. As a direct and proximate result of DAVOL's and BARD's negligence, Plaintiff has suffered injuries and damages.

33. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended,

showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT II

### Loss of Consortium

34. Plaintiff hereby incorporates and realleges the General Allegations, paragraphs 23 through 33, as if fully set forth herein.

35. Plaintiff Stormi Montgomery is and at all times relevant hereto has been the lawful spouse of Plaintiff, and as such, she is entitled to the comfort and enjoyment of her society and services.

36. As a direct and proximate result of the foregoing misconduct of the Defendants, Plaintiff Stormi Montgomery has been deprived of her spouse's companionship, services, solace, consortium, affection and attention to which she is entitled.

37. As a result of the foregoing, Plaintiff Stormi Montgomery has been and will continue to be injured and damaged.

Wherefore, Plaintiff demands judgment for all damages available to her under the law as a result of the Defendants' conduct as alleged herein and such other relief as this Court deems just and appropriate.

## COUNT III

### Strict Product Liability

38. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-37 as though fully set forth herein.

39. Defendants DAVOL and BARD are strictly liable to Plaintiff in the following respects: DAVOL and BARD designed, manufactured, assembled, distributed, conveyed and/or sold the Kugel Patch for hernia repair surgery; the Kugel Patches subject to the Class I recall were defective because they failed to perform safely and effectively for the purpose they were originally designed. Plaintiff's Kugel Patch was a Class I recalled device that failed while in his body, causing him to develop serious physical complications, which will require subsequent, painful and unnecessary removal surgery of his Kugel Patch; at all times mentioned, the Kugel Patch was substantially in the same condition as when it left the possession of DAVOL; and the Kugel Patch implanted into Plaintiff was being used in a manner reasonably anticipated at the time it was implanted in him by his surgeon.

40. Furthermore, the Kugel Patches, like the one found in Plaintiff, at the time they left the possession of DAVOL and BARD were inherently dangerous for their intended use and were unreasonably dangerous products which presented and constituted an unreasonable risk of danger and injury to Plaintiff as follows:

i. The Kugel Patch was sold in a defective condition by design and manufacture;

ii. The Kugel Patch as designed and manufactured was unsafe to

Case 3:07-cv-00176-RV-EMT Document 1 Filed 04/20/2007 Page 8 of 49

Plaintiff;

iii. The Kugel Patch as designed and manufactured was unreasonably dangerous to Plaintiff;

iv. The Kugel Patch did not perform safely as an ordinary consumer/patient, like Plaintiff, would expect;

v. The Kugel Patch as designed and manufactured was unsafe for its intended use;

vi. DAVOL and BARD failed to warn the end user about the dangers and risks of the product;

vii. DAVOL and BARD knew the component parts of the Kugel Patch as implemented through design and/or manufacture could cause injury to the end user;

viii. Failing to implement an adequate, safe and effective "memory recoil ring" and/or its interaction with the mesh of the Kugel Patch to withstand the foreseeable stresses they would be subject to within the intra-abdominal space;

ix. Failing to avoid migration of the Kugel Patch and/or its components from the initial site of the hernia repair surgery.

x. Any other acts or failures to act by DAVOL or BARD regarding the studying, testing, designing, developing, manufacturing, inspecting, producing, advertising, marketing, promoting, distributing, and/or

Case 3:07-cv-00176-RV-EMT Document 1 Filed 04/20/2007 Page 9 of 14

sale of Kugel Patches for hernia repair surgery as will be learned during discovery.

41. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum as permitted by statute together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT IV**

**Negligent Infliction of Emotional Distress**

42. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-41 as though fully set forth herein.

43. Defendants DAVOL and BARD are liable to Plaintiff for the negligent infliction of emotional distress in the following respect: Plaintiff suffered severe emotional distress, which was as a result of Defendant's negligent conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or selling of the Kugel Patch for hernia repair surgery.

44. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's negligent conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery.

45. Therefore, DAVOL and BARD are liable to Plaintiff.

46. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

**COUNT V**

**Intentional Infliction of Emotional Distress**

47. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-46 as though fully set forth herein.

48. Defendants DAVOL and BARD are liable to Plaintiff for the intentional infliction of emotional distress in the following respect:Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in studying, designing, developing, testing, inspecting, manufacturing, producing, advertising, marketing, promoting, distributing, and/or sale of the Kugel Patch for hernia repair surgery.

49. Plaintiff suffered severe emotional distress, which was as a result of DAVOL's and BARD's extreme outrageous, intentional, willful, and reckless conduct in failing to adequately and safely design and construct an effective and safe Kugel Patch for hernia repair surgery, in complete

and reckless disregard of safety to Plaintiff.

50. Therefore, DAVOL and BARD are liable to Plaintiff.

51. DAVOL's and BARD's conduct in continuing to market, sell and distribute the Kugel Patch after obtaining knowledge they were failing and not performing as represented and intended, showed complete indifference to or a conscious disregard for the safety of others justifying an award of additional damages for aggravating circumstances in such a sum which will serve to deter DAVOL, BARD and others from similar conduct in the future.

**Wherefore**, Plaintiff requests a judgment against DAVOL and BARD for damages in a sum to confer jurisdiction upon this Court together with interest on that amount at the legal rate from the date of judgment until paid, for court costs and for other such relief this Court deems just and appropriate.

## COUNT VI

### Breach of Implied Warranty

52. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-51 as though fully set forth herein.

53. Defendants DAVOL and BARD are liable to Plaintiff for their breach of implied warranty in the following respect: DAVOL and BARD sold the Kugel Patch, which was implanted in Plaintiff. DAVOL and BARD impliedly warranted to Plaintiff, his physicians and health care providers, that the Kugel Patch was of merchantable quality and safe for the use for which it was intended.

54. DAVOL and BARD knew or should have known that the Kugel Patch at the time of sale was intended to be used for the purpose of surgically implanting them into the body for hernia repair.

55. Plaintiff, his physicians and health care providers reasonably relied on DAVOL's and

BARD's judgment, indications and statements that the Kugel Patch was fit for such use.

56. When the Kugel Patches were distributed into the stream of commerce and sold by DAVOL and BARD, they were unsafe for their intended use, and not of merchantable quality, as warranted by DAVOL and BARD in that they had very dangerous propensities when used as intended and implanted into a patient's body where they could cause serious injury of harm or death to the end user.

57. Plaintiff suffered such injuries and damages as a result of DAVOL and BARD's conduct and actions.

## COUNT VII

### Failure to Warn

58. Plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 23-57 as though fully set forth herein.

59. In the course of business, DAVOL and BARD designed, manufactured and sold the Kugel Patch to Naval Hospital of Pensacola for hernia repair surgeries.

60. At the time of the design, manufacture and sale of the Kugel Patch, and more specifically at the time Plaintiff received the Kugel Patch, it were defective and unreasonably dangerous when put to it's intended and reasonably anticipated use. Further, the Kugel Patche was not accompanied by proper warnings regarding significant adverse consequences associated with the Kugel Patch.

61. BARD and DAVOL failed to provide any warnings, labels or instructions of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product involved significant dangers not readily obvious to the ordinary user of the product. BARD and DAVOL failed to warn of the known or

knowable injuries associated with malfunction of the Kugel Patch, including but not limited to rupture of the Patch and severe peritonitis and infection which would require subsequent surgical procedures and could result in severe injuries.

62. The dangerous and defective conditions in the Kugel Patch existed at the time they were delivered by the manufacturer to the distributor. At the time Plaintiff had his hernia repair surgery the Kugel Patch was in the same condition as when manufactured, distributed and sold.

63. Plaintiff did not know at the time of use of the Kugel Patch, nor at any time prior thereto, of the existence of the defects in the Kugel Patch.

64. Plaintiff suffered the aforementioned injuries and damages as a direct result of DAVOL and BARD's failure to warn.

65. The conduct of BARD and DAVOL in continuing to market, promote, sell and distribute the Kugel Patch after obtaining knowledge that the products were failing and not performing as represented and intended, showed a complete indifference to or conscious disregard for the safety of others justifying an award in such sum which will serve to deter BARD, DAVOL and others from similar conduct.

**Wherefore**, Plaintiff respectfully requests judgment in his favor and against DAVOL and BARD for such amount that is determined to be fair and reasonable, for such other relief as may be fair and reasonable under the circumstances and for his costs.

Dated this 19th day of April, 2007.

**A TRIAL BY JURY IS REQUESTED ON ALL COUNTS.**

Plaintiff, NEIL MONTGOMERY, JR.,
By his Attorneys,

R. Jason Richards
FL Bar # 0018207
Neil D. Overholtz
FL Bar #0188761
Aylstock, Witkin, Kreis & Overholtz, PLLC
4400 Bayou Boulevard, Ste 58A
Pensacola, Florida 32503
Phone: (850) 916-7450
Facsimile: (850) 916-7449
jrichards@awkolaw.com
noverholtz@awkolaw.com